IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ELBERT R. COMPTON,

                Plaintiff,

     v.

ROBERT MARTIN and TAMMY MAASSEN,

                Defendants.

OPINION and ORDER

23-cv-250-jdp

---

Plaintiff Elbert R. Compton, proceeding without counsel, is currently incarcerated at Wisconsin Secure Program Facility. Compton alleges that when he was incarcerated at Waupun Correctional Institution and Jackson Correctional Institution, prison staff discontinued and failed to reinstate medications that were effective to treat severe pain and numbness in one of his hands. I granted him leave to proceed on Eighth Amendment and Wisconsin-law medical negligence claims.

Defendants Nurse Practitioner Robert Martin and prison Health Services Manager Tammy Maassen each separately move for summary judgment. Dkt. 44 and Dkt. 50. I will grant defendants' motions for summary judgment because Martin had legitimate reasons to deny Compton certain medications and because Maassen appropriately deferred to the medical judgments made by advanced care providers. I will relinquish jurisdiction over Compton's state-law claims.

PRELIMINARY MATTERS

Defendant Martin moved for an extension of time to file his summary judgment reply materials because he didn't receive Compton's opposition materials until only four days before the reply deadline. Dkt. 61. I will grant that motion and I will consider Martin's reply materials.

During the briefing of defendants' summary judgment motions, Compton submitted amended versions of his opposition materials. Dkts. 67–70. I will consider those materials. Along with his amended summary judgment opposition materials, Compton filed a motion captioned as one opposing defendants' motions for summary judgment. Dkt. 68. I will deny this motion as unnecessary because it is already clear that he opposes defendants' motions.

Compton moves for the court to appoint him an expert, primarily because Wisconsin-law medical negligence claims generally require expert testimony in support. Dkt. 40. I will deny that motion. Federal Rule of Evidence 706 allows a court to appoint a neutral expert when doing so is necessary to help the court or the jury "interpret complex information . . . , not to represent the interests of one party." *DeJesus v. Godinez*, 720 F. App'x 766, 772 (7th Cir. 2017) (citing *Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016)). I will not appoint an expert purely to bolster one side's case. In certain cases I will consider recruiting counsel for a plaintiff to help obtain an expert in complex medical care cases, but I conclude that it is unnecessary to do so in this case given the evidence in the record and the relative merits of Compton's Eighth Amendment claims. *See Watts v. Kidman*, 42 F.4th 755, 766 (7th Cir. 2022). An expert is unnecessary for Compton's state-law claims in this court because I am relinquishing jurisdiction over those claims.

I will now turn to defendants' motions for summary judgment.

## UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Elbert R. Compton was incarcerated at Waupun Correctional Institution from 2008 to 2020. Defendant Robert J. Martin was a nurse practitioner who was employed by a temporary medical staffing agency that contracted to provide medical services at WCI. In 2020, Compton was transferred to Jackson Correctional Institution. Defendant Tammy Maassen, a registered nurse, was employed by the Wisconsin Department of Corrections as the health services manager at Jackson Correctional Institution.

In 2007, Compton broke his right little finger playing basketball; he now suffers from carpel tunnel syndrome in his right hand and degenerative joint disease in his right little finger, causing him chronic pain, neuropathy, and numbness.

Compton was transferred to Waupun Correctional Institution in 2008. During his time at WCI, Compton received various medical treatments, including surgical intervention, as well as prescription medications in an attempt to address his pain symptoms. In August 2018, Compton and his doctor at the prison executed a Chronic Pain Management Agreement in which Compton expressly agreed to abide by the following regulations:

- I will take all medication provided to me as prescribed. I will not vary the dosage or interval without authorization from my primary care provider.

- I will not share, trade, hoard, divert or misuse my medication in any way.

- I will not use any contraband, including marijuana, cocaine, heroin, tobacco, alcohol etc.

- I will not use anyone else's medications.

- I will submit to witnessed random urine or blood tests if requested by my primary care provider.

- I understand if I do not follow this agreement, my narcotic treatment may need to be adjusted or terminated. . . .

Dkt. 47-2, at 1.

In December 2018, Compton was prescribed 600 mg of gabapentin to be taken four times a day. Gabapentin isn't a narcotic, but it is a non-DOC-formulary drug considered "problematic" in prisons because it has a high potential for abuse or misuse, such as inmates selling their doses, being extorted for their doses, or stockpiling doses to get high. Dkt. 52, ¶¶ 16–17.

In February 2019, a nurse noted that Compton had not taken other prescribed medications (amitriptyline and mirtazapine) five of the last seven days. In March 2019 a provider noted that Compton had not been fully compliant with taking his prescribed medications. In March and April 2019, two "medication misuse" notices were entered into Compton's file regarding incidents that had occurred in 2018: Compton had (1) put a white powdery substance in another inmate's coat that tested positive for cocaine; and (2) tested positive for tetrahydrocannabinol after a urinalysis.

In April 2019, Compton told a doctor that he wasn't receiving his gabapentin; the doctor checked with the pharmacy, which reported that Compton was receiving that medication. The doctor ordered a test to examine the level of gabapentin in Compton's system. The test showed a very low level of gabapentin in Compton's system, incompatible with him taking it as prescribed. In early May 2019, a second test was performed, also showing only a low level of gabapentin in Compton's system. Staff again confirmed that Compton was indeed receiving gabapentin from the pharmacy. Compton states that a nurse was weaning him off of gabapentin in response to his complaints of blurry vision, but he does not cite any medical records supporting that assertion.

4

On May 31, 2019, Compton met with defendant Nurse Practitioner Martin for his complaints of right shoulder pain and pain in his right hand. Compton stated to Martin that he had tried numerous medications to manage his pain, including gabapentin, meloxicam, NSAIDs, amitriptyline, and capsaicin/lidocaine, that his gabapentin wasn't helping with his pain, and that he had previously been prescribed pregabalin and would like to be restarted on that medication. Pregabalin is another non-formulary drug that DOC staff is concerned about prescribing because of the risk of misuse by inmates.

Martin concluded that Compton's test results showing only low levels of gabapentin in his system meant that Compton was misusing his gabapentin in violation of his Chronic Pain Management Agreement. He also noted Compton's "medication misuse" notices from events in 2018 and "several other incidents of contraband and misuse." Dkt. 47-10, at 2. Based on those records, Martin discontinued Compton's gabapentin prescription and denied his request for pregabalin. Martin concluded that Compton "may continue with ibuprofen and nortriptyline for pain at this time." *Id.* In making these decisions, Martin followed his employer's "Clinical Field Employee Handbook," which states, "When using drugs to control pain, the best strategy is to use the least strong drug which still gives adequate pain relief." Dkt. 48-2, at 52.

In August 2019, an outside provider proposed restarting Compton's pregabalin. Martin denied this request (Compton does not bring a claim about this decision).

In 2020, Compton underwent carpel-tunnel release surgery in 2020 and he was transferred to Jackson Correctional Institution, where he was treated by providers including Dr. Lily Liu, who Compton named as a defendant but was previously dismissed from this

lawsuit. Dkt. 23. The prison providers refused to reinstate Compton's previous prescription for pregabalin, stating that he had a history of misusing medication.

As the health services manager, defendant Maassen didn't directly treat Compton, wasn't responsible for supervising advanced care providers, and couldn't prescribe medications herself. Compton submitted correspondence addressed to defendant Maassen about his medical care, but there is no evidence that she received and responded to those requests; nurses triaged prisoners' medical requests. Maassen's involvement in Compton's treatment was limited to her being consulted regarding inmate grievances filed by Compton about his care.

In September 2020, Compton filed an inmate grievance stating that medical staff was not following the outside provider's recommendation for pregabalin. The institution complaint examiner met with Maassen to review Compton's medical records relevant to the grievance. Maassen believed that Compton was receiving proper treatment. She told the examiner that the denial of pregabalin was based on Compton's history of medication misuse; that the outside provider recommended pregabalin but would defer to the prison provider about that medication; that the outside provider also recommended elbow splinting while sleeping, which the prison did provide; and that Compton was soon scheduled to see a prisoner provider for further treatment. *See* Dkt. 53-1, at 130 (outside provider's note). The complaint examiner recommended dismissing the grievance, in part because DOC regulations treat outside provider's orders as recommendations to the prisoner provider. The grievance was dismissed.

In June 2021, Compton filed a grievance about being denied pregabalin. The examiner met with Maassen, who noted that Dr. Liu had recently denied Compton's request for pregabalin, noting his history of drug misuse. Maassen further noted that an electromyography test of Compton's ulnar nerve ordered by Dr. Liu showed that it was normal, with no evidence

6

suggesting neuropathy. Compton attempts to dispute this fact by interpreting the test report's reference to "median" as meaning that he had a moderate medical problem. This is incorrect: the report refers to a "median" nerve and concludes that there was no evidence of neuropathy. *Id.* at 122. Maassen believed that pregabalin was unnecessary given this test result. The complaint examiner recommended dismissing the grievance, and it was dismissed.

In November 2021, Compton filed another grievance about being denied pregabalin. The complaint examiner met with Maassen to discuss Dr. Liu's treatment notes from a recent appointment with Compton. Maassen stated that Liu noted that the electromyography result was normal and that Compton's gabapentin was discontinued for misuse. Maassen still believed that Compton was receiving appropriate care. The complaint examiner recommended dismissing the grievance, and it was dismissed.

I will discuss additional facts as they are relevant to the analysis.

ANALYSIS

Compton contends that defendant Nurse Practitioner Martin wrongfully discontinued or denied effective pain medications and that Health Services Manager Maassen wouldn't do anything to help Compton despite him making her aware that he was in persistent severe pain. Compton proceeds on claims under both Eighth Amendment and Wisconsin-law medical negligence theories. I begin with his Eighth Amendment claims.

**A. Eighth Amendment claims**

The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one

for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). Defendants do not dispute that Compton's pain was a serious medical need.

A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

### 1. Nurse practitioner Martin

Compton contends that defendant Martin consciously disregarded his hand pain in May 2019 by discontinuing his gabapentin prescription and refusing to reinstate his pregabalin.

A prison medical provider can violate the Eighth Amendment despite providing some care if the provider "persists in a course of treatment known to be ineffective" or a provider's decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016). But in considering these issues I must consider the totality of care that Compton received, not just pick apart individual decisions. *Id.* at 728. "There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). The Eighth Amendment does not give prisoners the right

to demand specific treatment; this is especially true for controlled pain medications like gabapentin or pregabalin. *Burton v. Downey*, 805 F.3d 776, 785–86 (7th Cir. 2015). Nor does it guarantee successful treatment.

Discontinuation of particular pain medications is a common part of the ordinary course of patients' care as providers attempt different treatments. Martin attempted to treat Compton's pain with nortriptyline and ibuprofen, which doesn't indicate conscious disregard. And Martin had additional reason to refuse Compton commonly abused medications such as gabapentin and pregabalin because Compton had a history of drug-abuse behaviors (passing cocaine to another inmate and testing positive for THC) and because two tests showed that Compton wasn't taking the gabapentin prescribed to him, which violated his pain-management agreement to properly take that medication.

Compton states that these test results don't show that he was diverting his gabapentin because he states that he was being weaned off gabapentin. But he doesn't provide any evidence supporting this assertion or suggesting that Martin was aware of another provider's decision to wean gabapentin. Compton also argues that Martin misstated his previous drug-abuse incidents as occurring in 2019, after he signed the pain-management agreement; those events actually occurred in 2018, before he signed the agreement. Martin's proposed findings of fact incorrectly noted those events as occurring in 2019, Dkt. 45, ¶¶ 15, 17. But Martin's contemporaneous treatment notes correctly state that these events occurred in 2018. Dkt. 47-10, at 2. If Compton means to argue that Martin shouldn't have been able to consider those events because they predated his pain-management agreement, that argument is meritless. It was reasonable to consider Compton's history of drug abuse in assessing whether he should be prescribed medications that have a high risk of misuse. Because no reasonable

jury could conclude that Martin consciously disregarded Compton's pain, I will grant Martin's motion for summary judgment on this claim.

### 2.  Health Services Manager Maassen

Compton's claim against Maassen isn't about direct care by her, it is about her review of Compton's medical records in response to grievances that Compton filed about his care. Maassen argues that she cannot be liable for an Eighth Amendment violation because she doesn't have the power to prescribe medication or overrule treatment decisions by a doctor. That may be true in her day-to-day responsibilities as the health services manager, but given her involvement in consulting on Compton's grievances, I infer that she had the power to recommend taking some action in the grievance process if she believed that Compton's providers were violating his rights. *Cf. Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (nurse's deference to doctors' instructions "may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient"). So I won't grant summary judgment to Maassen on this basis.

Nonetheless, I conclude that no reasonable jury could conclude that Maassen consciously disregarded Compton's pain. For each of Compton's grievances, Maassen reviewed Compton's medical records and the reasons that providers gave for denying him pregabalin. Those records showed that there were plausible reasons for denying pregabalin: Compton's history of medication misuse, the electromyography suggesting that Compton wasn't suffering neuropathy, and the availability of other treatments. Maassen must generally defer to the treatment decisions made by advanced care providers, and there is nothing in the record suggesting that her deference here was "blind or unthinking" as opposed to a reasoned review

of Compton's medical records. I will grant Maassen's motion for summary judgment on Compton's Eighth Amendment claim against her.[1]

## B. Medical negligence claims

Compton also brings Wisconsin-law medical negligence claims against defendants. The court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a), which permits a federal district court to hear a state-law claim if it is related to a federal claim in the same action. Compton doesn't allege any other basis for federal jurisdiction over the state-law claims. Absent unusual circumstances, district courts will relinquish supplemental jurisdiction over state-law claims if all federal claims have been resolved before trial. *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). Neither party identifies any unusual circumstances that would justify retaining jurisdiction over Compton's state-law claims. I will decline to exercise subject matter jurisdiction over these claims.

Compton may refile those claims in state court, subject to the applicable Wisconsin statute of limitations. Those limitations periods have been tolled while this case has been pending, but they will begin again 30 days from now. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under [the court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

---

[1] Defendant Maassen also contends that she is entitled to qualified immunity on Compton's Eighth Amendment claim against her. Because I am dismissing this claim on the merits, I need not consider Maassen's qualified immunity argument.

ORDER

IT IS ORDERED that:

1. Plaintiff Elbert R. Compton's motion to appoint an expert, Dkt. 40, is DENIED.

2. Defendant Martin's motion for extension of time, Dkt. 61, is GRANTED.

3. Plaintiff's motion to deny defendants' motions for summary judgment, Dkt. 68, is DENIED as unnecessary.

4. Defendant Martin's motion for summary judgment, Dkt. 44, is GRANTED with respect to plaintiff's Eighth Amendment claim.

5. Defendant Maassen's motion for summary judgment, Dkt. 50, is GRANTED with respect to plaintiff's Eighth Amendment claim.

6. Plaintiff's state-law claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

7. The clerk of court is directed to enter judgment accordingly and close this case.

Entered May 6, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge